JUDGE SCHEINDLIN



# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK



| | |
|---|---|
| JULIE RUSSO, on behalf of herself and all others similarly situated,<br><br>               Plaintiff,<br><br>vs.<br><br>GEROVA FINANCIAL GROUP, LTD., STILLWATER CAPITAL PARTNERS, INC., STILLWATER CAPITAL PARTNERS LLC, JACK DOUECK, RICHARD RUDY, GARY T. HIRST, MICHAEL HLAVSA, KEITH LASLOP, JOSEPH BIANCO, JASON GALANIS, and NET FIVE HOLDINGS, LLC,<br><br>               Defendants. | Case No.:<br><br>**CLASS ACTION**<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF STATE LAWS**<br><br>**JURY TRIAL DEMANDED** |

Julie Russo ("Plaintiff"), by her attorneys, on behalf of herself and all others similarly situated, alleges the following based upon the investigation of plaintiffs' counsel, except as to allegations specifically pertaining to plaintiff, which are based on personal knowledge. The investigation of counsel included, among other things, Stillwater Capital Partners, Inc. and Stillwater Capital Partners LLC's (together, "Stillwater") communications with Plaintiff, a review of Gerova Financial Group, Ltd.'s ("Gerova" or the "Company") public filings with the United States Securities and Exchange Commission ("SEC") and press releases, media and news reports, public documents in related matters and other publicly available data, including, but not limited to, publicly available trading data relating to the price and trading volume of Gerova ordinary shares.

## Introduction

1.      This is a class action on behalf of a class of all persons and entities who invested in any of the Stillwater Funds[1] and whose interests in any of the Stillwater Funds was liquidated in the transactions between Stillwater and Gerova consummated on January 20, 2010 (the "Stillwater Transactions"), and who (1) submitted a request for redemption of their accounts in the Stillwater Funds before the Stillwater Transactions and have not been paid in full on those redemption requests, and/or (2) received Gerova Series A Preferred Stock, which converted into restricted, unregistered Gerova ordinary shares, to recover damages caused by Defendants' violations of certain state laws (the "Class").

2.      Plaintiff's claims of breaches of fiduciary duties, breach of contract and unjust enrichment arise from Defendants' execution of the Stillwater Transactions, and their subsequent failure to register the Gerova shares received by the Class leaving Class members with restricted shares that they have been unable to trade while the price of Gerova common stock has plummeted due to Defendants' wrongful conduct from $23.26 on January 19, 2010, the day before the Stillwater Transactions closed, to $5.25 on February 24, 2011 when the NYSE halted trading in Gerova stock. Additionally, Defendants engaged in fraudulent conveyance by

---

[1] The "Stillwater Funds" include: (1) Stillwater Asset Backed Fund, LP, a Delaware limited partnership; (2) Stillwater Asset Backed Fund II, LP, a Delaware limited partnership; (3) Stillwater WPB Venture Partners I LP, a Delaware limited partnership; (4) Stillwater WPB Venture Partners II LP, a Delaware limited partnership; (5) Stillwater Market Neutral Fund, LP, a Delaware limited partnership; (6) Stillwater Market Neutral Fund II, LP, a Delaware limited partnership; (7) Stillwater Matrix Fund LP, a Delaware limited partnership; (8) Stillwater Real Estate Partners Fund, LP, a Delaware limited partnership (together, these are the "Delaware Funds"); (9) Stillwater Asset Backed Offshore Fund, Ltd., a Cayman Islands exempted company; (10) Stillwater Asset Backed Fund SPV, a Cayman Islands exempted company; (11) SABF II Onshore SPV, a Cayman Islands exempted company; (12) Stillwater Market Neutral Fund Ltd., a Cayman Islands exempted company; (13) Stillwater Loan Opportunities Fund, LLC, a Delaware limited liability company, and its sub fund, the Stillwater Loan Opportunities Fund (Series A); (14) Stillwater Loan Opportunities Fund, SPC, a Cayman Islands exempted company registered as a segregated portfolio company, and its sub fund, the Stillwater Loan Opportunities Fund Segregated Portfolio (Series A); and (15) Stillwater Market Neutral Fund III SPC, a Cayman Islands exempted company registered as a segregated portfolio company, and its sub fund, the Stillwater Matrix Segregated Portfolio.

transferring substantial value out of the Company to a related entity while failing to pay out Class members' unsatisfied redemptions.

3.      Because the Stillwater Funds were invested in overvalued troubled assets, the Stillwater Funds ran into a liquidity problem as an increasing number of investors sought withdrawal from or redemption of their accounts. The Stillwater Funds could not pay out redemptions requested by their investors and the dates on which investors were supposed to receive their money.

4.      In mid-December 2009, Stillwater sent an email to the Class offering "a plan to provide better liquidity for our funds."

5.      Pursuant to this plan, Stillwater entered into a deal with Gerova whereby Gerova acquired all assets, liabilities and equity interests of the Stillwater Funds, and investors in the Stillwater Funds received restricted shares of Gerova in exchange for liquidation of their interests in the Stillwater Funds. These restricted shares were supposed to have been registered, which would make them freely tradable. However, registration requires an audit/appraisal of the Stillwater assets. Such an audit or appraisal has not yet occurred.

6.      Gerova engaged in the Stillwater Transactions as part of a series of contemporaneous transactions which included: (1) purchasing an 81.5% controlling equity interest in Amalphis Group, Inc. and its wholly-owned subsidiary Allied Provident Insurance Company Ltd. (the "Amalphis Group"), (2) acquiring Northstar Group Holdings, Ltd., and its wholly-owned subsidiaries Northstar Reinsurance, Ltd. and Northstar Reinsurance Ireland, Ltd, and (3) purchasing the assets and investments held by two funds managed by Weston Capital Asset Management LLC (the "Wimbledon Funds") (these transactions, together with the Stillwater Transactions, are the "Acquisitions").

7.      Prior to the Acquisitions, Gerova was a special purpose acquisition company with no assets and no meaningful operations.

8.      Further, according to Gerova's articles of incorporation, the Company's corporate existence would have ceased, except for the purpose of winding up the Company's affairs and liquidation, if no business combination was completed by January 23, 2010.

9.      According to Gerova's 2009 annual report filed on Form 20-F with the SEC on June 2, 2010 (and amended on June 16, 2010) ("2009 Annual Report"), Stillwater valued the assets of the Stillwater Funds at $541.25 million.

10.     As of the date of this Complaint, Plaintiff and the Class hold only restricted shares of Gerova which they cannot trade and are effectively valueless or have unsatisfied redemption claims.

**Jurisdiction and Venue**

11.     Jurisdiction is conferred by 28 U.S.C. § 1332(d), because this is a class action in which the matter in controversy exceeds $5 million and Plaintiff is a citizen of the State of New York and Defendant Gerova is a citizen of a foreign state. Venue is proper pursuant to 28 U.S.C. § 1391(a) and (c) as Stillwater and the operations of the Stillwater Funds are located in this District, Gerova ordinary shares trade on the New York Stock Exchange ("NYSE") in this District, and a substantial part of the events giving rise to the claims asserted herein occurred in this District.

12.     In connection with the facts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## Parties

13.     Plaintiff is a resident of the state of New York and invested in several of the Stillwater Funds on November 1, 2006 and March 1, 2007. Plaintiff maintained interests in the Stillwater Funds at the time of the Stillwater Transactions.

14.     Defendant Gerova was a blank check company, formerly known as Asia Special Situation Acquisition Corporation ("ASSAC"),[2] formed on March 22, 2007 under Cayman Islands law.  On August 30, 2010, shareholders approved Gerova's continuance as an exempted company under the laws of Bermuda and its de-registration under Cayman Islands law. Gerova's principal executive offices are located at Cumberland House, 5th Floor, 1 Victoria Street, Hamilton, HM 11, Bermuda.  Gerova's ordinary shares traded on the American Stock Exchange under the symbol "GFC" and were transferred to the NYSE on September 8, 2010.[3] The NYSE halted trading in Gerova stock on February 24, 2011.

15.     Defendant Stillwater Capital Partners, Inc. ("Stillwater Inc.") is a New York corporation and registered investment adviser which acts as the investment manager for the Stillwater Funds.

16.     Defendant Stillwater Capital Partners LLC ("Stillwater LLC") is a Delaware limited liability company which is the general partner in the Delaware Funds and manages the business and affairs of the Stillwater Funds. Stillwater LLC is responsible for all management and decision-making matters with respect to the Delaware Funds, including overseeing the day-to-day operations and affairs.

17.     Stillwater Inc. and Stillwater LLC together are referred to herein as "Stillwater."

---

[2] The ASSAC/Gerova entity will be referred to as "Gerova" throughout this Complaint, without regard to the official name change from ASSAC to Gerova which occurred in connection with the closing of the Stillwater Transactions on January 20, 2010.
[3] On November 22, 2010, Gerova announced a one-for-five reverse share consolidation of Gerova's ordinary shares, which was approved by Gerova shareholders by written consent.

18.     Stillwater and the Stillwater Funds are located at 41 Madison Avenue, 29th Floor, New York, New York 10010.

19.     Defendant Jack Doueck ("Doueck") is a principal of Stillwater Inc. and Stillwater LLC. Doueck has authority and control over Stillwater Inc. and Stillwater LLC. Doueck sits on a three-person investment committee as part of Stillwater Inc.'s engagement as investment manager for the Stillwater Funds under Gerova's control.

20.     Defendant Richard Rudy ("Rudy") is a principal of Stillwater Inc. and Stillwater LLC. Rudy has authority and control over Stillwater Inc. and Stillwater LLC. Rudy sits on a three-person investment committee as part of Stillwater Inc.'s engagement as investment manager for the Stillwater Funds under Gerova's control.

21.     Stillwater Inc., Stillwater LLC, Doueck and Rudy are referred to herein as the "Stillwater Defendants."

22.     Defendant Gary T. Hirst ("Hirst") was a director of Gerova since its inception. Hirst was appointed President in October 2007 and was appointed Chairman of the Board on April 8, 2010. On February 10, 2011, Hirst resigned from his positions with Gerova. Hirst was involved in negotiating the Stillwater Transactions. Up through June 1, 2010, Hirst was signing Gerova's SEC filings as President and principal executive officer.

23.     Defendant Michael Hlavsa ("Hlavsa") has been Chief Financial Officer ("CFO") and a director of Gerova since March 2007. The Company is being managed by Hlavsa, as the principal executive officer, and the board of directors pending the appointment of a new Chairman, President and CEO.

24.     Defendant Keith Laslop ("Laslop") has been a director of Gerova since May 2008 and was appointed Gerova's Chief Operating Officer ("COO") in June 2010. Laslop was a

member of the three-person Gerova Real Estate Committee with Defendants Bianco and Galanis. Laslop resigned on February 10, 2011.

25.     Defendant Joseph Bianco ("Bianco") was appointed as Gerova's Chief Executive Officer ("CEO") in June 2010. Bianco was a member of the three-person Gerova Real Estate Committee with Defendants Laslop and Galanis. Bianco resigned on February 10, 2011.

26.     Defendant Jason Galanis ("Galanis") was the President of Gerova Advisors LLC, a wholly owned subsidiary of Gerova. Gerova announced termination of his employment with Gerova Advisors on February 10, 2011, but stated that he will "continue to serve the Company as a consultant and will assist new management and the board in connection with acquisitions and financings." Galanis was a member of the three-person Gerova Real Estate Committee with Defendants Laslop and Bianco. In 2007, Galanis was barred from serving as an officer or director of any U.S. public company for five years based on accounting fraud and electronic forgery with respect to a Sarbanes-Oxley certification at Penthouse International, Inc.

27.     Defendant Net Five Holdings, LLC is a Florida limited liability company ("Net Five") which was formed as a real estate joint venture between Gerova, Planet Five Development Group, LLC ("Planet Five") and Robert V. Willison on May 26, 2010. Gerova holds a 49% equity interest in Net Five. However, the Gerova Real Estate Group, LLC, a Florida limited liability company filed articles of organization with the Florida Department of State on March 25, 2010, and changed its name to Net Five on June 8, 2010. Defendants Hlavsa and Bianco are listed as members of the Managements Board of Net Five on an amendment to the articles of organization dated as of October 25, 2010, and filed with the State of Florida on November 3, 2010.

**Class Action Allegations**

28.     Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of a class of all persons and entities who invested in any of the Stillwater Funds and whose interests in any of the Stillwater Funds was liquidated in the Stillwater Transactions, and who (1) submitted a request for redemption of their accounts in the Stillwater Funds before the Stillwater Transactions and have not been paid in full on those redemption requests, and/or (2) received Gerova Series A Preferred Stock, which converted into restricted, unregistered Gerova ordinary shares, to recover damages caused by Defendants' violations of certain state laws (the "Class").

29.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at the present time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds of members of the Class located throughout the United States.

30.     Plaintiff's claims are typical of the claims of the members of the Class.  Plaintiff and all members of the Class have sustained damages because of defendants' unlawful activities alleged herein.  Plaintiff has retained counsel competent and experienced in class and securities litigation and intends to pursue this action vigorously.  The interests of the Class will be fairly and adequately protected by Plaintiff.  Plaintiff has no interests which are contrary to or in conflict with those of the Class that Plaintiff seeks to represent.

31.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

32.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

    (a)    whether defendants violated state laws by their acts and omissions as alleged herein;

    (b)    whether defendants participated directly or indirectly in the course of conduct complained of herein; and

    (c)    whether the members of the Class have sustained damages and the proper measure of such damages.

**Wrongful Acts**

33.    The Stillwater Defendants were unable to meet the redemption/withdrawal requests of investors in the Stillwater Funds due to the Stillwater Funds' liquidity problems. According to the complaint in *Eden Rock Finance Fund, LP  et al. v. Gerova Financial Group, Ltd., et al.*, Supreme Court of the State of New York, New York County, No. 650613/2011 ("*Eden Rock*"), Eden Rock Finance Fund, LP, another investor in the Stillwater Funds, was told by Jonathan Kanterman, then Managing Director of Stillwater, in a conference call on or around April 2, 2009 that the funds at issue in that case (the Stillwater Asset Backed Fund II, LP and the Stillwater Asset Backed Offshore Fund Ltd.) had at least $110 million in unpaid redemptions, and acknowledged that those investors are creditors of the funds.[4]

*Stillwater Sells Interests in the Stillwater Funds to Gerova*

34.    Unable to meet the redemption and withdrawal requests of their investors, the Stillwater Defendants entered into a transaction with Gerova thereby selling off the assets in the Stillwater Funds to a company with no assets or meaningful operations at that time.

---

[4] Gerova's 2009 Annual Report states that there are approximately $30 million in unsatisfied investor redemption claims. See ¶ 41, below.

35.     According to the proxy statement issued by Gerova to its shareholders, dated January 5, 2010 (the "Gerova Proxy"), Gerova and its advisors met with Stillwater principals at Stillwater's offices in New York City on November 17, 2009 to discuss a potential transaction between Gerova and Stillwater. On November 22, 2009, Defendant Hirst and other Gerova advisors again met with Stillwater principals at Stillwater's offices in New York City to discuss terms of the proposed transaction and on December 18, 2009, Gerova and Stillwater entered into a term sheet agreement regarding the transaction.

36.     On December 17, 2009, Stillwater sent Plaintiff and the Class an email stating "[w]e have a plan to potentially provide better liquidity for our funds and investments."

37.     The contemplated Stillwater Transactions required approval of Stillwater LLC as the general partner of the Delaware Funds, in addition to approval of a majority in interest of the limited partners of the Delaware Funds, and approval by a majority of the directors of the Stillwater Funds domiciled in the Cayman Islands. Gerova shareholders also voted on the deal.

38.     The Gerova Proxy stated that the general partner of the Delaware Funds and the directors of the Stillwater Funds domiciled in the Cayman Islands have already approved or are expected to approve the transaction, and that there appear to be no appraisal rights for limited partners in the Delaware Funds who dissent from the merger transaction.

39.     According to the Gerova Proxy, Stillwater and its principals, Defendants Doueck and Rudy, were responsible for "spearheading solicitation of approvals from investors in the Stillwater Funds."

40.     On December 31, 2009, Gerova, Stillwater and the Stillwater Funds entered into a series of agreements pursuant to which Gerova acquired all assets, liabilities and equity interests of the Stillwater Funds, in exchange for Gerova stock.  Specifically, Gerova, Stillwater and the

10

Delaware Funds executed several Agreements and Plans of Merger, pursuant to which Gerova became the parent of the Delaware Funds. Gerova, Stillwater and the Cayman Islands-based Stillwater Funds executed Asset Purchase Agreements, pursuant to which Gerova received the assets and liabilities of the Cayman-based Stillwater Funds.

41.     According to Gerova's 2009 Annual Report, Stillwater's unsatisfied redemptions are, in fact, liabilities of Gerova. Gerova's 2009 Annual Report states that "The Stillwater Funds currently owe approximately $30.0 million in unsatisfied investor redemption claims. Many, if not all, of these debts and claims will be required to be repaid by our subsidiaries from the sale of fund assets or collection of accounts receivable before available funds can be redeployed or reinvested." Additionally, the 2009 Annual Report states, "former investors to whom such redemption claims are owed may take legal action to collect these debts which could adversely affect the operations of our subsidiaries."

42.     According to the Gerova Proxy, on January 4, 2010, the terms of the agreements between Gerova, Stillwater and the Stillwater Funds were finalized.

*Terms of the Stillwater Transactions*

43.     On January 20, 2010, Gerova completed its acquisitions of an 81.5% interest in the Amalphis Group and approximately $650 million of assets from the Stillwater Funds and the Wimbledon Funds.

44.     In accordance with the terms of the Stillwater Transactions, Stillwater received 541,250 Gerova Series A Fixed Price Mandatory Convertible Preferred Shares (the "Preferred Shares"), which are restricted shares, as payment for the interests in the Stillwater Funds, plus additional consideration consisting of 266,667 Gerova ordinary shares and a cash fee of

approximately $12 million. Gerova received the assets and liabilities or equity interests of the Stillwater Funds.

45.    The 541,250 Preferred Shares were to be allocated among the Stillwater Funds, and therefore the Class, based on unaudited estimated net asset values of each of the Stillwater Funds as of December 31, 2009. Following the closing, the consideration attributed to each of the Stillwater Funds was to be adjusted based on independently appraised net asset values as of December 31, 2009, by appropriately adjusting the number of ordinary shares issuable upon conversion of the Preferred Shares into Gerova ordinary shares. The audited financial statements and appraised net asset value were to be delivered by March 31, 2010.

46.    In addition, Gerova and Stillwater Inc. entered into an Investment Management Agreement, as of January 20, 2010, pursuant to which Stillwater Inc. was retained by Gerova to provide investment management services with respect to the assets and Stillwater Funds obtained by Gerova for a three year term. In exchange, Stillwater Inc. is to be paid (1) a management fee payable quarterly equal to 0.25% of the aggregate net asset value of the funds, (2) an additional incentive fee at the close of each quarter equal to 20% of any increase in net asset value from the prior quarter, and (3) 44% of cash net proceeds from the sale or liquidation of assets to be reinvested in asset backed loans and related secured lending investments, with such percentage to be increased to 72% of cash net proceeds once Stillwater has been repaid its accrued management and incentive fees owed by the Stillwater Funds. Additionally, Gerova will pay the managers of the Stillwater Funds $24 million in unpaid management fees.

47.    Pursuant to the Investment Management Agreement, Stillwater Inc., as investment manager, is required to form a three-person investment committee, consisting of Defendants Doueck and Rudy and a third person to be designated by Gerova.

*Gerova Failed to Register the Shares the Class Received as Consideration*

48.     In connection with the closing of the Stillwater Transactions, Gerova and Stillwater also entered into a Registration Rights Agreement, dated as of January 20, 2010, pursuant to which members of the Class are entitled to registration of the ordinary shares received upon conversion of the Preferred Shares. According to the Registration Rights Agreement, the Company is required to file a registration statement under the Securities Act of 1933 to register for resale the ordinary shares received upon conversion of the Preferred Shares. However, if the registration statement is not declared effective by July 31, 2010, Gerova is required to issue additional ordinary shares as partial liquidated damages at a rate of 1% of the total number of unregistered ordinary shares up to a maximum of 10%.

49.     On April 23, 2010, the holders of more than two-thirds of Gerova voting shares, including the Preferred Shares, consented to a modification of the conversion terms of the Preferred Shares, providing that they may be converted at any time into ordinary shares of Gerova at a conversion price of $6, as opposed to the prior restrictions which allowed only one-sixth of the Preferred Shares to be converted per month at a conversion price of $7.50. Further, the Registration Rights Agreement was amended and restated as of April 23, 2010 to extend the time to file a registration statement for the restricted shares from April 20, 2010 to July 31, 2010 and extend the effectiveness date of such a registration statements from July 31, 2010 to December 31, 2010.

50.     Moreover, the amended and restated Registration Rights agreement provides that upon conversion of the Preferred Shares into ordinary shares, the ordinary shares shall be distributed to the Stillwater investors on the latest of (1) the completion of the post-closing audit and adjustment of assets of the Stillwater Funds, (2) the effectiveness date of the registration

statement, or (3) January 31, 2011, or any other date approved of by Gerova's board of directors and by written consent of the record owners of the converted shares.

51.    On May 14, 2010, Gerova filed a press release on Form 6-K with the SEC, announcing that, at the extraordinary general meeting of shareholders of Gerova on May 12, 2010, the shareholders approved the conversion of the Preferred Shares into ordinary shares. As a result, Gerova had 133,383,310 ordinary shares issued and outstanding.

52.    Then, on December 3, 2010, Gerova filed a Form 6-K with the SEC, which stated:

On January 20, 2010, we entered into a registration rights agreement, as amended and restated on April 23, 2010, with the record holders of substantially all of our Series A preferred shares issued in January 2010; which preferred shares were subsequently converted into 24,741,667 ordinary shares (123,708,833 shares prior to our recent share consolidation, representing approximately 88.75% of our outstanding shares). Under the terms of such agreement, (a) we agreed to prepare and file a registration statement with the Securities and Exchange Commission ("SEC") registering such ordinary shares for resale under the Securities Act of 1933, as amended (the "Resale Registration Statement") and undertook to cause such Resale Registration Statement to be declared effective on or before January 31, 2011, and (b) the holders of such ordinary shares agreed not to effect any resales or distributions of such shares until the *latest* to occur of (i) delivery of the audits of the December 31, 2009 net asset values of the funds that were our counterparties in a series of transactions that we completed on January 20, 2010 (the "Counterparty Funds"), (ii) January 31, 2011, or (iii) the effective date of the aforesaid Resale Registration Statement. As of the date of this report, the Resale Registration Statement has not been filed with the SEC. As set forth below, it is highly unlikely that our 24,741,667 ordinary shares will be registered under the Securities Act and be available for resale on January 31, 2011. Accordingly, the shares will continue to be restricted as set forth in the agreements and described above.

The audited net asset values of the assets of the Counterparty Funds are necessary in order for us to prepare the financial statements required to be included in the Resale Registration Statement. These audited net asset values were originally due to be delivered to us by March 31, 2010; however, certain of the Counterparty Funds only delivered to us their financial statements in November 2010. This has resulted in a delay in the preparation of the Resale Registration Statement, which we have not yet filed with the SEC. Although we intend to file the Resale Registration Statement as soon as is reasonably practicable, it is highly unlikely that such Resale Registration Statement will be declared effective by the SEC prior to January 31, 2011.

Pursuant to the registration rights agreement, we are subject to share penalties to the holders of our shares under the registration rights agreement in an amount equal to 1% of the number of ordinary shares owned by such holders for each month, or part thereof, commencing February 2011 that the Resale Registration Statement is not declared effective, up to a maximum penalty of 10% of such ordinary shares. The penalty, if any, is payable in kind by the delivery of additional ordinary shares.

53.     The appraisals and audits necessary to register the shares have yet to take place. These shares cannot be registered until an appraisal of the assets has been completed. Accordingly, investors in the Stillwater Funds still hold restricted shares and cannot sell their Gerova stock, and are effectively being held captive while the value of their Gerova shares has declined more than 77 percent. Approximately 88% of Gerova shares outstanding are restricted.

54.     An article on Hedge Fund Alert, www.HFAlert.com, on January 19, 2011 stated, "[r]eached this week, Stillwater founder Jack Doueck acknowledged it could be another six months before investors are permitted to sell their Gerova shares."

*The Net Five Transaction*

55.     On May 26, 2010, Gerova entered into a real estate joint venture with Planet Five Development Group, LLC ("Planet Five") and Robert V. Willison, forming Net Five Holdings, LLC, a Florida limited liability company ("Net Five"), of which Gerova holds a 49% equity interest.

56.     Pursuant to the Operating Agreement of Net Five and the Contribution Agreement between Gerova and Planet Five, Gerova contributed to Net Five all of the owned real estate properties and real estate loan assets acquired from the Stillwater Funds, despite being liable for millions of dollars of outstanding unpaid redemptions.

57.     The Operating Agreement also calls for consultation with the Gerova Real Estate Committee on matters requiring guarantees or financial commitments from Gerova or any Gerova subsidiary that directly or indirectly owns Gerova's real estate portfolio. The Gerova

Real Estate Committee consists of Defendants Bianco, Laslop, and Galanis. Defendant Galanis was barred by Judge Sweet on April 24, 2007 from serving as an officer or director of any U.S. public company for five years based on accounting fraud and electronic forgery with respect to a Sarbanes-Oxley certification at Penthouse International, Inc.

### The Truth Begins to Emerge

58.    In connection with the closing of the Acquisitions on January 20, 2010, Michael Hlavsa and Stuart Sundlum were removed from their positions as directors of the Company, and Marshall Manley, Michael Kantor and Jack Doeuck were appointed as Gerova directors. Additionally, Marshall Manley was appointed CEO of Gerova, and Tore Nag was appointed as Chief Operating Officer.

59.    On April 8, 2010, less than three months later, Marshall Manley resigned from his positions as CEO and Chairman of the Board of Gerova and Tore Nag resigned from his position as Chief Operating Officer. The Company appointed Defendant Hirst, Gerova's President and board member, as Chairman of the Board.

60.    As part of Manley's resignation from his $650,000 a year job with 100% possible bonus, he and Gerova contracted for nondisclosure in exchange for certain payments, which Gerova has failed to make. Accordingly, Manley has sued Gerova in the United States District Court for the Southern District of Florida to recover sums due to him under the contract.

61.    Additionally, Manley's company Marseilles Capital LLC is also suing Gerova, for failure to make several payments due under a Share Repurchase Agreement executed in conjunction with Manley's resignation.

62.    On June 1, 2010, Stillwater received a Wells Notice from the SEC stating that an individual at Stillwater may have violated Section 10(b) of the Exchange Act by disseminating

materially misleading statements about the Stillwater asset backed funds' loan portfolio and performance in the monthly Executive Summary reports distributed by Stillwater to investors. According to an attorney at Herrick, Feinstein LLP, Stillwater was notified six months later in writing that the SEC closed the matter with no recommendation of enforcement.

63.    On December 7, 2010, Gerova announced that it entered in an agreement to acquire 100% of London-based investment bank Seymour Pierce Holdings Ltd. and 100% of New York-based institutional broker-dealer Ticonderoga Securities. In connection with this transaction, Seymour Pierce Chairman and CEO, Keith Harris, was to become Chairman and CEO of Gerova effective January 1, 2011. However, Gerova announced in a February 10, 2011 press release that Harris had elected to defer his appointment to these positions. It was later announced in late February 2011 that the merger discussions with both companies had been called off. A Bermuda news outlet reported that, according to *The Financial Times*, Seymour Pierce called off the merger because of mounting uncertainty about Gerova's finances.

64.    The *Eden Rock* plaintiffs alleged that in a conference call with Defendant Doueck on December 30, 2010, Doueck admitted that he had not performed due diligence on Gerova prior to the deal.

65.    On January 10, 2011, Dalrymple Finance LLC issued a research report on Gerova (the "Dalrymple Report"), describing Gerova as an "NYSE-listed shell game" which is "operated for the benefit of insiders and affiliates, rather than [Gerova] shareholders."

66.    The Dalrymple Report alleged that assets acquired from the Stillwater Funds were likely impaired and overvalued, and that this information is being hidden from investors to allow Stillwater to collect fees based on inflated asset values, to the detriment of investors, and to hold the Stillwater investors captive to prevent a stock sell-off, as 88% of Gerova shares outstanding

are restricted. The Dalrymple Report stated that their "information regarding the dire state of acquired assets come from none other than Stillwater."

    67.    The Dalrymple Report provided the following evaluation of one set of Stillwater's assets as an example:

> The Matrix Group, a UK asset manager is a significant investor in Stillwater Matrix Fund, a lot of the assets of which were purchased by [Gerova]. We consider the independent auditor's report to Matrix is a scathing indictment of Stillwater valuation practices and reported NAV. Pricewaterhousecoopers disclaimed their opinion on Stillwater. We paraphrase their reasoning as follows:
>
> - Inability to obtain sufficient audit evidence in relation to $136 million of fair value as of December 2009.
>
> - Inability to determine the recoverability of receivable balances due (from sub-fund managers that have suspended redemptions) of $20.5 million as of December 2009.
>
> - Uncertainty in relation to Stillwater's ability to repay $95.7 million in leverage
>
> - The auditors of Stillwater concluded that since the evidence over the valuation of a significant portion of the option is unavailable and they were not able to apply other auditing procedures to satisfy themselves as to the valuation of the option, the scope of their work was not sufficient to enable them to express an opinion on the financial statements of Stillwater at 31 December 2009.
>
> - The auditors of Stillwater issued an adverse opinion on the financial statements for the year ended 31 December 2008.
>
> This information tells us that the Stillwater assets were known to be impaired and extremely difficult to value; importantly, Stillwater still has unresolved disputes with auditors over valuation. So difficult is the process that Stillwater's auditors issued an adverse opinion on 2008 financial statements because of their inability to verify stated values.

    68.    Additionally, without an asset audit, as is necessary to register the restricted shares held by the Class, it is easier for the Company to transfer assets to related entities, such as Net Five, as it has done with the real estate assets acquired from the Stillwater Funds. According to the Dalrymple Report, "It appears as if management traded 100% ownership in the assets for a

49% non-controlling interest. Not only does this dilute GFC shareholder interest, but as a non-consolidated entity, it puts the operational and financial management of the assets beyond shareholder view."

69.     Further, the Dalrymple Report provided examples of various red flags that should have alerted the Stillwater Defendants of shady dealings at Gerova. For example, the Dalrymple Report explained how the acquisition of 81.5% of the Amalphis Group was a related-party transaction:

> In 2009, the owner of Amalphis, NatProv (of which Mr. Hirst is a shareholder), sold 81.5% of the company to Rineon (RIGI.PK) for $36 million. Current [Gerova] CFO Michael Hvalsa was the CFO of [Rineon] at the time. According to [Rineon] filings, the company purchased Amalphis with $36 million in cash. [Rineon] raised the cash to make the acquisition through the sale of preferred shares to Intigy Absolute Return Fund. Intigy is a company controlled by current [Gerova] President Gary Hirst. In this case, Mr. Hirst was, in essence, both the buyer and seller via different entities apparently using limited partners [sic] money to monetize an investment. A tangled web, indeed.

> \*         \*         \*

> A year later in 2010, [Rineon] sold 81.5% of Amalphis to [Gerova, as part of the Acquisitions] for approximately $50-80 million depending on the share price used; NatProv, the firm in which Mr. Hirst is still a shareholder, owns all the common shares of Amalphis, as far as we can gather from regulatory filings. As a result of the transaction, [Rineon] owns approximately 1.8 million shares of [Gerova].

70.     Further, on or around January 11, 2011, the *Eden Rock* plaintiffs received an email from one of the independent directors of the Cayman-based Stillwater Asset Backed Offshore Fund Ltd., confirming that the directors of that fund had resigned at an earlier date due to serious disagreements with Stillwater over the valuation of the fund's assets. The *Eden Rock* complaint also alleged that the independent directors of the Stillwater Asset Backed Offshore Fund Ltd. reported Stillwater's conduct in connection with the Gerova deal to the Cayman Islands Monetary Authority.

71.    The *Eden Rock* plaintiffs obtained a copy of an audit of the two funds' 2009 financial statements in late January 2011. According to the *Eden Rock* complaint, the auditors were not able to give an opinion as to the Stillwater Asset Backed Offshore Fund Ltd. because Stillwater had not applied GAAP to value the assets, despite being required to do so by the fund's private placement memorandum. Similarly, the valuations for the Stillwater Asset Backed Fund II, LP, a Delaware limited partnership, also deviated from GAAP. The *Eden Rock* complaint alleged that had Stillwater utilized GAAP, the funds would have been insolvent. The results of this audit have not been publicly released.

72.    On February 10, 2011, Gerova issued a press release, which was filed on Form 6-K with the SEC, announcing that four members of the Board of Directors resigned: Defendants Bianco and Laslop, as well as Arie Bos and Leonard de Waal. Additionally, Defendant Hirst resigned as Chairman and President of the Company, and Defendant Bianco resigned from the position of acting CEO.[5] In light of these resignations, Gerova announced that it intends to reorganize its audit committee, as two of its three members resigned.[6]

73.    Gerova also announced that Dennis L. Pelino was appointed as President and Chairman of the board of directors.

74.    On February 15, 2011, the Company issued a press release stating that Dennis L. Pelino withdrew his name from consideration as the Chairman and president of the Company because he and the Company "were unable to reach agreement on the terms of his appointment." Gerova announced that pending the appointment of a new Chairman and president, the Company is being managed by Defendant Hlavsa and the board of directors.

---

[5] According to Gerova's response to an order to show cause in *Katten Muchin Rosenman LLP v. Gerova Fin. Group. Ltd.*, No. 11-cv-0867, Docket No. 8, at p. 3 (S.D.N.Y.), Joseph Bianco resigned as CEO effective December 31, 2010.
[6] As of January 26, 2010 the audit committee consisted of Keith Laslop, Leonard de Waal and Arie van Roon.

75.    Further, the press release stated:

In view of the unusual market activity in the ordinary shares of Gerova Financial Group, the NYSE has contacted the company in accordance with its usual practice. Although it is the Company's position not to comment on unusual market activities, it has no reason to believe that the above-mentioned event had any relationship to such market activity.

76.    On February 24, 2011, the NYSE halted trading in Gerova's stock, and it has not traded since.

### Loss Causation/Economic Loss

77.    As detailed herein, Defendants engaged in a course of conduct which resulted in Plaintiff and the Class suffering economic loss by depriving them of the value contained in their accounts in the Stillwater Funds at the time of the Stillwater Transactions, and leaving them with untradeable restricted shares in Gerova, who stock price has fallen from $23.26 on January 19, 2010, the day before the Stillwater Transactions closed, to $5.25 on February 24, 2011 when the NYSE halted trading in Gerova stock. The stock has not traded since.

### Claims for Relief

### COUNT I

### Breach of Fiduciary Duties
### Against the Stillwater Defendants

78.    Plaintiff repeats and realleges the allegations in ¶¶ 1-77 as if set forth fully herein, except that for purposes of this claim, Plaintiff expressly excludes and disclaims any allegation that could be construed as alleging or sounding in fraud.

79.    Defendants Stillwater, Doueck and Rudy were fiduciaries to Plaintiff and the Class in that they managed investments made by Plaintiff and the Class in the Stillwater Funds, and Plaintiff and the Class reasonably relied on Defendants Stillwater, Doueck and Rudy to maintain, manage and run the Stillwater Funds, for the benefit of Plaintiff and the Class.

80.    Defendants Stillwater, Doueck and Rudy have violated their fiduciary duties of care, loyalty, and candor owed to the Class by the acts and conduct alleged herein.

81.    Defendants Stillwater, Doueck and Rudy have violated their fiduciary duties by: failing to pay redemptions requested by Plaintiff and other members of the Class; entering into and encouraging and inducing the Class's approval of the Stillwater Transactions without performing due diligence on Gerova, as admitted by Defendant Doueck; receiving large fees in connection with completion of the Stillwater Transactions and entering into a lucrative investment management contract in connection with the Stillwater Transactions, at the expense of Plaintiff and Class; and failing to cause the audit/appraisal necessary for the restricted shares to be registered.

82.    Due to the breaches of fiduciary duties by Defendants Stillwater, Doueck and Rudy, Plaintiff and the Class have been damaged.

## COUNT II

### Aiding and Abetting Breach of Fiduciary Duties
### Against Defendants Gerova, Hirst and Hlavsa

83.    Plaintiff repeats and realleges the allegations in ¶¶ 1-82 as if set forth fully herein, except that for purposes of this claim, Plaintiff expressly excludes and disclaims any allegation that could be construed as alleging or sounding in fraud.

84.    As alleged above, Defendants Stillwater, Doueck and Rudy breached their fiduciary duties to Plaintiff and the Class.

85.    Such breaches of fiduciary duties could not and would not have occurred but for the conduct of Defendants Gerova, Hirst and Hlavsa, who, therefore, aided and abetted such breaches of fiduciary duties.

86.     Defendants Gerova, Hirst and Hlavsa aided and abetted these breaches of fiduciary duties by engaging in the Stillwater Transactions and acquiring the assets, liabilities and equity interests of the Stillwater Funds, paying the Stillwater Defendants large fees at the expense of the Class, and failing to cause the audit/appraisal necessary for the restricted shares to be registered.

87.     Due to the unlawful acts of Defendants Gerova, Hirst and Hlavsa, Plaintiff and the Class have been damaged.

## COUNT III

### Unjust Enrichment
### Against Defendant Gerova

88.     Plaintiff repeats and realleges the allegations in ¶¶ 1-77 as if set forth fully herein, except that for purposes of this claim, Plaintiff expressly excludes and disclaims any allegation that could be construed as alleging or sounding in fraud.

89.     Defendant Gerova acquired all assets, liabilities and equity interests of the Stillwater Funds in the Stillwater Transactions, as described above.

90.     Members of the Class received untradeable restricted shares in Gerova, which are currently valueless, in exchange for their interests in the Stillwater Funds, which is inequitable and unjust.

91.     Plaintiff and the Class seek restitution.

## COUNT IV

### Breach of Contract
### Against Defendant Gerova

92.     Plaintiff repeats and realleges the allegations in ¶¶ 1-77 as if set forth fully herein, except that for purposes of this claim, Plaintiff expressly excludes and disclaims any allegation that could be construed as alleging or sounding in fraud.

93.     In connection with the closing of the Stillwater Transactions, Gerova and Stillwater entered into a Registration Rights Agreement, dated as of January 20, 2010, for the benefit of investors in the Stillwater Funds pursuant to which they are entitled to registration of the ordinary shares received upon conversion of the Preferred Shares. The Registration Rights Agreement was amended and restated as of April 23, 2010 to extend the time to file a registration statement for the restricted shares from April 20, 2010 to July 31, 2010 and extend the effectiveness date of such a registration statements from July 31, 2010 to December 31, 2010.

94.     Registration of the ordinary shares received upon conversion of the Preferred Shares is a material provision of the Registration Rights Agreement and assigns some value to the otherwise valueless consideration received by members of the Class for giving up their interests in the Stillwater Funds.

95.     As of the date of this complaint, registration of such shares has not occurred and is thus a breach of the Registration Rights Agreement.

96.     Due to Gerova's breach of contract, members the Class have been damaged.

## COUNT V

### Fraudulent Conveyance
### Against Defendants Gerova, Net Five, Laslop, Bianco, and Galanis

97.     Plaintiff repeats and realleges the allegations in ¶¶ 1-77 as if set forth fully herein.

98.     The claim is brought under the Florida Uniform Fraudulent Transfer Act, Section 726.105.

99.     Plaintiff and Class members whose redemption claims remain unsatisfied are creditors of Gerova. According to Gerova's 2009 Annual Report, "Many, if not all, of these debts and claims will be required to be repaid by our subsidiaries from the sale of fund assets or collection of accounts receivable before available funds can be redeployed or reinvested."

100.    Defendants Gerova, Laslop, Bianco, and Galanis transferred all of the owned real estate properties and real estate loan assets that Gerova acquired from the Stillwater Funds to Defendant Net Five.

101.    Defendants Gerova, Net Five, Laslop, Bianco, and Galanis made this transfer with actual intent to hinder, delay or defraud Plaintiff and the Class, as evidenced by the fact that Net Five is a related-party and Gerova, its principals and subsidiaries retain control of the property.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows: declaring this action to be a proper class action; awarding damages, including interest; awarding reasonable costs, including attorneys' fees; and such equitable/injunctive relief as the Court may deem proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: April 21, 2011                       KAPLAN FOX & KILSHEIMER LLP

                                            By: _____

                                            Frederic S. Fox
                                            Donald R. Hall
                                            Hae Sung Nam
                                            Irina Kobylevsky
                                            850 Third Avenue
                                            New York, NY 10022
                                            Telephone:  212-687-1980
                                            Facsimile:  212-687-7714

                                            *Counsel for Plaintiff*