UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                               :

**IN RE STILLWATER CAPITAL**     :    **OPINION AND ORDER**
**PARTNERS INC. LITIGATION**    :
                               :    **Master File No. 1:11-2275**
**This document relates to:**     :    **(SAS)**
**11 Civ. 2737**                  :

                               :

                               :

                               :
-----------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _3/_5/_1 2_

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

This consolidated putative class action, which concerns only state law claims, is part of a larger multi-district litigation.[1]  It arises out of plaintiffs' investments in the various Stillwater Funds[2] and Stillwater's[3] merger agreement

---

[1]     Plaintiffs allege federal claims in related consolidated class actions, however those claims are not addressed by these motions to dismiss.

[2]     Plaintiffs list these funds as: 1) Stillwater Asset Backed Fund, LP; 2) Stillwater Asset Backed Fund II, LP; 3) Stillwater WPB Venture Partners I, LP; 4) Stillwater WPB Venture Partners II, LP; 5) Stillwater Market Neutral Fund, LP; 6) Stillwater Market Neutral Fund II, LP; 7) Stillwater Matrix Fund, LP; 8) Stillwater Real Estate Partners Fund, LP; 9) Stillwater Advantage-20 Fund II, LP; 10) Stillwater Asset Backed Offshore Fund, Ltd.; 11) Stillwater Asset Backed Fund SPV; 12) SABF II Onshore SPV; 13) Stillwater Market Neutral Fund Ltd.; 14) Stillwater Loan Opportunities Fund, LLC; 15) Stillwater Loan Opportunities Fund, SPC; and 16) Stillwater Market Neutral Fund III SPC. *See* Amended Complaint ("Am. Compl.") ¶ 1, n.1.

[3]     Defendant Stillwater is comprised of Stillwater Capital Partners, Inc. ("SCP, Inc.") and Stillwater Capital Partners, LLC ("SCP, LLC").  I refer to them

with Gerova Financial Group, Ltd. ("Gerova").  Plaintiffs' amended complaint alleges, inter alia, breach of fiduciary duty; aiding and abetting breach of fiduciary duty; and breach of contract claims against SCP, Gerova, Net Five Holdings, LLC ("Net Five"), and various officers and directors of those companies.  Defendants now move to dismiss all state law claims.  Defendants advance three primary arguments in their motions to dismiss:[4] *first*, that the breach of fiduciary duty claims are derivative and therefore plaintiffs lack standing to bring them directly; *second*, that the claims are precluded by the Securities Litigation Uniform Standards Act ("SLUSA"); and *third*, that a corporation does not owe a fiduciary duty to its shareholders.  For the following reasons the motions of SCP, Gerova, and the individual SCP and Gerova defendants are granted in part and denied in part, and the claim against Net Five is dismissed.

## II.    BACKGROUND[5]

---

collectively as "SCP."

[4]    Defendants initially argued that the plaintiffs' claims were preempted by the Martin Act.  However, since the motions were filed, the New York Court of Appeals decided *Assured Guar. (UK) Ltd. v. J.P. Morgan Inv. Mgmt.*, 18 N.Y.3d 341 (2011), which held that such state law claims are not preempted by the Martin Act.  Additionally, some of the defendants have now withdrawn their Martin Act preemption arguments.

[5]    Unless otherwise noted, all facts are drawn from the Amended Complaint and are presumed true for the purposes of this motion.

### A.     Plaintiffs

The proposed class consists of those SCP investors who received restricted, unregistered Gerova shares as part of the SCP/Gerova merger[6] and SCP investors who sought redemption of their SCP funds, but were not paid in full prior to the SCP/Gerova merger.[7]

### B.     Defendants

There are ten named defendants in this action.  SCP, Inc., is a New York corporation that acts as investment manager for the Stillwater Funds,[8] and SCP, LLC, is a Delaware limited liability company that manages the business affairs of the Stillwater Funds.[9]  Jack Doueck is a principal of SCP and sits on an investment committee that manages the Stillwater Funds under Gerova's control.[10] He became a director of Gerova as part of the merger with SCP.[11]  Richard Rudy is a principal of SCP and sits on the investment committee with Doueck.[12]  Plaintiffs

---

[6]     *See* Am. Compl. ¶ 1.

[7]     *See id.*

[8]     *See id.* ¶ 18.

[9]     *See id.* ¶ 19.

[10]    *See id.* ¶ 21.

[11]    *See id.*

[12]    *See id.* ¶ 22.

allege the same six breach of fiduciary duty claims against each of these defendants:  (1) imprudently investing assets and failing to properly value them; (2) failing to sell assets in a timely manner; (3) failing to pay redemptions; (4) failing to perform due diligence on Gerova prior to the merger; (5) entering into the Gerova agreement whereby SCP directors received a lucrative contract at plaintiffs' expense; and (6) failing to submit audits to Gerova so the shares could be registered (Counts I-VI).[13]

Gerova, was a "blank check company" formerly known as Asia Special Situation Acquisition Corporation, which formed in March 2007.[14]  The name was officially changed to Gerova in connection with its merger with SCP in 2009.[15]  Gerova's principal offices are in Hamilton, Bermuda.[16]  Gary Hirst was a founding director of Gerova and was appointed its president in October 2007; he resigned on February 10, 2011.[17]  Michael Hlavsa has served as Chief Financial

---

[13]      *See id.* ¶ 87.

[14]      *See id.* ¶ 17.

[15]      *Id.* A blank check company is "a development stage company that has no specific business plan or purpose or has indicated its business plan is to engage in a merger or acquisition with an unidentified company, or companies, other entity or person."  17 C.F.R. § 230.419.

[16]      *See* Am. Compl. ¶ 17.

[17]      *See id.* ¶ 24.

4

Officer ("CFO") and a director of Gerova since March 2007.[18]  Keith Laslop was a Gerova director from May 2008 until his resignation on February 10, 2011.  He also served as Gerova's Chief Operating Officer ("COO") during part of that time.[19]  Joseph Bianco served as Gerova's Chief Executive Officer ("CEO") from at least April 17, 2010 until his resignation on February 10, 2011.[20]  Plaintiffs allege the same three breach of fiduciary duty claims against each of these defendants:  (1) failing to register plaintiffs' shares; (2) allowing its assets to deteriorate; and (3) transferring substantial assets to Net Five (Counts VII-IX). Plaintiffs also allege an aiding and abetting breach of fiduciary duty claim against Gerova, Hirst and Hlavsa (Count X), and a breach of contract claim against Gerova (Count XI).

Net Five was formed as a real estate joint venture between Gerova and two other non-parties; it is based in Florida.[21]  Plaintiffs allege an aiding and abetting breach of fiduciary duty claim against Net Five (Count XII).

## C.   Stillwater Funds Management and the Gerova Merger

---

[18]    *See id.* ¶ 25.  Hlavsa is proceeding pro se.

[19]    *See id.* ¶ 26.  Laslop has failed to enter an appearance.

[20]    *See id.* ¶ 27.

[21]    *See id*. ¶ 28.

Plaintiffs were investors in the Stillwater Funds, which were managed by SCP and contained "overvalued troubled assets."[22]  As investors sought to redeem their funds, the Stillwater Funds experienced liquidity issues and SCP was unable to pay out the redemptions.[23]  In an attempt to solve the illiquidity of their assets, SCP sought a merger with Gerova.[24]

As part of the merger agreement, Gerova acquired all of SCP's assets and liabilities.[25]  The investor plaintiffs received "restricted convertible Preferred Stock of Gerova"[26] and those who sought redemptions were to be paid by Gerova.[27]  As part of the merger, SCP received 266,667 Gerova ordinary shares, approximately $12 million in cash,[28] and the SCP directors — including Doueck and Rudy — received $24 million in unpaid management fees[29] and quarterly

---

[22]     *Id.* ¶ 3.

[23]     *See id.*

[24]     *See id.* ¶¶ 39-40.

[25]     *See id.* ¶ 40.

[26]     Consolidated Plaintiffs' Omnibus Memorandum of Law in Opposition to Defendants' Motions to Dismiss the Amended Complaint ("Pl. Opp.") at 1.

[27]     *See* Am. Compl. ¶ 5.

[28]     *See id.* ¶ 42.

[29]     *See id.* ¶ 45.

management fees going forward.[30]  Doueck became a Gerova director as part of the

merger,[31] and both he and Rudy sat on a three-person "investment committee"; the

third person was appointed by Gerova.[32]  Plaintiffs allege that this merger was not

only ill-advised, but that Doueck entered into it "for his own benefit, without even

performing any due diligence"[33] and that it was done at plaintiffs' expense.[34]

### D.    Gerova Management

Plaintiffs fared no better after the merger.  Even though the Amended

Registration Rights Agreement ("Am. RRA") required Gerova to register

Plaintiffs' shares, the shares were never registered[35] and plaintiffs' redemption

requests were not honored.[36]  Because of this, plaintiffs argue that they have been

forced to "hold virtually worthless restricted shares," which have "declined more

than 77 percent" in value.[37]  Plaintiffs allege that life insurance settlement policies

---

[30]     *See id.*

[31]     *See id.* ¶ 44.

[32]     *See id.* ¶ 45, n7.

[33]     *Id.* ¶ 47.

[34]     *See id.* ¶ 87.

[35]     *See id* ¶ 49.

[36]     *See id.* ¶¶ 13-14.

[37]     *Id.* ¶ 60.

and corporate loans defaulted as a result of Gerova's failure to pay premiums,[38] adding to the devaluation of Gerova assets.  On May 26, 2010, Gerova formed Net Five as part of a real estate joint venture with two non-parties.[39]  Under that agreement, Gerova transferred "all of the owned real estate properties and real estate loan assets acquired from the Stillwater Funds" to Net Five.[40]  Gerova received a 49 percent equity interest in the joint venture.[41]

Between January 20, 2010 and February 15, 2011, Gerova experienced high management turnover, including three different CEOs during that time.[42]  On February 24, 2011, the New York Stock Exchange ("NYSE") ceased trading of Gerova stock and Gerova securities were delisted on April 18, 2011.[43] Gerova terminated its stock registration on June 15, 2011.[44]  SCP and Gerova are in negotiations to unwind the SCP/Gerova merger,[45] however plaintiffs assert that this

---

[38]     *See id.* ¶ 62.

[39]     *See id.* ¶ 67.

[40]     *Id.* ¶ 68.

[41]     *See id.* ¶ 67.

[42]     *See id.* ¶¶ 71, 72, 80, 81.

[43]     *See id.* ¶ 83.

[44]     *See id.*

[45]     *See id.* ¶ 8.

will not allow SCP to recoup all the assets that it originally contributed to Gerova.

## III.   LEGAL STANDARDS

### A.   Motion to Dismiss

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court "accept[s] all factual allegations in the complaint as true, and draw[s] all reasonable inferences in the plaintiff's favor."[46]  The court evaluates the sufficiency of the complaint under the "two-pronged approach" advocated by the Supreme Court in *Ashcroft v. Iqbal.*[47]  *First*, "[a] court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'"[48]  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to withstand a motion to dismiss.[49]  *Second*, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then

---

[46]   *Wilson v. Merrill Lynch & Co.*, — F.3d —, 2011 WL 5515958, at *6 (2d Cir. Nov. 14, 2011) (quotation marks omitted).

[47]   556 U.S. —, 129 S.Ct. 1937, 1950 (2009).

[48]   *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Iqbal*, 129 S.Ct. at 1950).  *Accord Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010).

[49]   *Iqbal*, 129 S.Ct. at 1949 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

determine whether they plausibly give rise to an entitlement for relief."[50]  To

survive a Rule 12(b)(6) motion to dismiss, the allegations in the complaint must

meet a standard of "plausibility."[51]  A claim is facially plausible "when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged."[52]  Plausibility "is not akin to a

probability requirement;" rather, plausibility requires "more than a sheer

possibility that a defendant has acted unlawfully."[53]

      "In considering a motion to dismiss for failure to state a claim

pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the

complaint, documents attached to the complaint as exhibits, and documents

incorporated by reference in the complaint."[54]  However, the court may also

consider a document that is not incorporated by reference, "where the complaint

'relies heavily upon its terms and effect,' thereby rendering the document 'integral'

---

[50]    *Id.* at 1950.  *Accord Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010).

[51]    *Twombly*, 550 U.S. at 564.

[52]    *Iqbal*, 129 S. Ct. at 1949 (quotation marks omitted).

[53]    *Id.* (quotation marks omitted).

[54]    *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

to the complaint."[55]  The court may also consider "legally required public
disclosure documents filed with the SEC."[56]

## IV.   APPLICABLE LAW

### A.   Personal Jurisdiction

On a motion under Rule 12(b)(2), when the issue of personal
jurisdiction "is decided initially on the pleadings and without discovery, the
plaintiff need show only a prima facie case."[57]  Plaintiffs "can make this showing
through [their] own affidavits and supporting materials containing an averment of
facts that, if credited . . . would suffice to establish jurisdiction over the
defendant."[58]  Thus, a court may consider materials outside the pleadings,[59] but

---

[55]      *Id*. (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir.
2006)).  *Accord Global Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 156
(2d Cir. 2006).

[56]      *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.
2007).

[57]      *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d
117, 120 (2d Cir. 1984).  *Accord Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720,
725 (S.D.N.Y. 2010) ("As no discovery has yet taken place, to survive a motion to
dismiss the plaintiff must plead factual allegations [that] constitute a prima facie
showing of jurisdiction.") (quotation marks omitted).

[58]      *Whitaker v. American Telecasting Inc.*, 261 F.3d 196, 208 (2d Cir.
2001) (quotation marks omitted).

[59]      *See Hsin Ten Enter. USA, Inc. v. Clark Enters.*, 138 F. Supp. 2d 449,
452 (S.D.N.Y. 2000).

must credit plaintiffs' averments of jurisdictional facts as true.[60]  "[A]ll allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party."[61]  Nonetheless, where a "defendant rebuts plaintiffs' unsupported allegations with direct, highly specific, testimonial evidence regarding a fact essential to jurisdiction — and plaintiffs do not counter that evidence — the allegation may be deemed refuted."[62]

### 1.    Specific Jurisdiction Under CPLR 302(a)(1)

Under section 302(a)(1) a court may exercise specific jurisdiction over a non-domiciliary, provided that two conditions are met:  the non-domiciliary defendant transacts business within New York and the claim against the non-domiciliary defendant arises directly out of this activity.[63]  Section 302(a)(1) "is a single-act statute requiring but one transaction — albeit a purposeful transaction —

---

[60]    *See Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996).

[61]    *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993). *Accord Whitaker*, 261 F.3d at 208.

[62]    *Schenker v. Assicurazioni Generali S.P.A., Consol.*, No. 98 Civ. 9186, 2002 WL 1560788, at *3 (S.D.N.Y. July 15, 2002).

[63]    *See CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986).

to confer jurisdiction in New York."[64]

"New York courts define 'transact[ing] business' as purposeful activity — 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'"[65]   There is no definitive test to determine if a defendant has purposefully availed itself of the privilege of conducting activities in New York.   Rather, the totality of the defendant's contacts must be reviewed to determine whether jurisdiction is proper.[66]

## B.   Standing

SCP, Gerova, and the directors and officers of SCP and Gerova argue that plaintiffs lack standing to assert direct claims for breach of fiduciary duties, aiding and abetting breach of fiduciary duties, and breach of contract, because any

---

[64]   *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 166 (2d Cir. 2005).   *Accord Deutsche Bank Secs., Inc. v. Montana Bd. of Invs.*, 7 N.Y.3d 65, 71 (2006) (This is a "single act statute [and] . . . proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted.") (quotation marks omitted).

[65]   *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (quoting *McKee Elec. Co. v. Rauland-Borg Corp.*, 20 N.Y.2d 377, 382 (1967)).

[66]   *See CutCo Indus.*, 806 F.2d at 368.

13

injuries were sustained by *the Funds*, the only entities that may bring suit.[67]

Under New York law,[68] a claim is direct if "'the wrongdoer has breached a duty owed to the shareholder independent of any duty owing to the corporation wronged.'"[69]  "Allegations of mismanagement or diversion of assets by officers or directors to their own enrichment, without more, plead a wrong to the corporation only, for which a shareholder may sue derivatively but not individually."[70]  Furthermore, "New York courts have consistently held that

---

[67]  *See* Stillwater Mem., at 10-11; Gerova's Memorandum of Law in Support of Its Motion to Dismiss Amended Complaint ("Gerova Mem."), at 10-12.

[68]  SCP is comprised of SCP, LLC, a Delaware limited liability company, and SCP, Inc., a New York corporation.  However, SCP has characterized itself as "a New York based registered investment advisor," and has made no statement that Delaware law should apply to the claims against it.  Stillwater's Memorandum of Law in Support of Its Motion to Dismiss ("Stillwater Mem."), at 2.  As such, the court will apply New York law.  *See, e.g.*, *Schwimmer v. Allstate Ins. Co.*, 176 F.3d 648, 650 (2d Cir. 1999) ("Allstate . . . waived its [choice of law] argument by failing to bring to the attention of the district court the potential applicability of [another jurisdiction's] law").  *Accord Vacold LLC v. Cerami*, 545 F.3d 114, 122-23 (2d Cir. 2008).

[69]  *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 401 (S.D.N.Y. 2010) (quoting *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt.*, 376 F. Supp. 2d 385, 409 (S.D.N.Y. 2005)).

[70]  *Abrams v. Donati*, 66 N.Y.2d 951, 953 (1985) ("For a wrong against a corporation a shareholder has no individual cause of action, though he loses the value of his investment or incurs personal liability in an effort to maintain the solvency of the corporation.").  *Accord Debussy v. Deutsche Bank AG*, No. 05 Civ. 5550, 2006 WL 800956, at *3 (S.D.N.Y. Mar. 29, 2006) ("When the duty implicated in a breach of duty claim is the normal duty to manage the affairs of the

diminution in the value of shares is quintessentially a derivative claim."[71]  Even

though decreased share value harms the individual shareholder, it "is said to *derive*

from the harm suffered principally by the corporation and only collaterally to

shareholders, and thus is derivative in nature."[72]

### C.    SLUSA Preclusion[73]

"SLUSA was enacted in 1998 to prevent class action plaintiffs from

circumventing the heightened pleading requirements under the [Private Securities

Litigation Reform Act] through artful pleading."[74]  SLUSA states:

No covered class action based upon the statutory or common law of any

---

corporation . . . [t]hat duty is owed to the corporation and not separately or
independently to the stockholders.  Therefore, the injury flowing from a claim of
mismanagement . . . is a wrong to the corporation.") (quotation marks omitted)
(alteration in original).

[71]    *Higgins v. NYSE, Inc.*, 806 N.Y.S.2d 339, 349 (Sup. Ct. N.Y. Co.
2005) (citing *Paradiso & DiMenna, Inc. v. DiMenna*, 649 N.Y.S.2d 126, 127 (1st
Dep't 1996) (a conversion of corporate assets case)).

[72]    *Id.* (citing *Paradiso & DiMenna*, 649 N.Y.S.2d at 127) (emphasis in
original).

[73]    "SLUSA is a statute of preclusion, rather than preemption," because it
does not "displace state law with federal law.  Rather, SLUSA renders
nonactionable[,] state claims brought by plaintiffs as part of a covered class action
because such claims cannot be litigated in state court *or* federal court."  *Romano v.
Kazacos*, 609 F.3d 512, 519, n.2 (2d Cir. 2010) (emphasis in original) (citing
*Kircher v. Putnam Funds Trust*, 547 U.S. 633, 637, n.1 (2006)).

[74]    *In re Beacon Assoc. Litig.*, 745 F. Supp. 2d 386, 429 (S.D.N.Y. 2010)
(citing *Ring v. AXA Fin., Inc.*, 483 F.3d 95, 97-98 (2d Cir. 2007)).

15

State or subdivision thereof may be maintained in any State or Federal court by any private party alleging (A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or (B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.[75]

A complaint triggers SLUSA when it alleges "'(1) an explicit claim of fraud or misrepresentation (e.g., common law fraud, negligent misrepresentations, or fraudulent inducement), or (2) other garden-variety state law claims that sound in fraud.'"[76] "'A claim sounds in fraud when, although not an essential element of the claim, the plaintiff alleges fraud as an integral part of the conduct giving rise to the claim.'"[77]

Courts "'look beyond the face of the complaint to analyze the substance of the allegations made,'"[78] to identify plaintiffs who attempt to avoid SLUSA preclusion through artful pleading.  Therefore, "[r]egardless of the words used by plaintiffs in their complaints and regardless of the labels they paste on each

---

[75]    15 U.S.C. § 78bb(f)(1)(A).

[76]    *In re Merkin*, — F. Supp. 2d —, Nos. 08 Civ. 10922, 09 Civ. 6031, 09 Civ. 6483, 2011 WL 4435873 at *10 (S.D.N.Y. Sept. 23, 2011) (quoting *Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc.*, 341 F. Supp. 2d 258, 261 (S.D.N.Y. 2004)).

[77]    *Id.* (quoting *Xpedior*, 341 F. Supp. 2d at 269).

[78]    *Id.* (quoting *Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 395 F.3d 25, 34 (2d Cir. 2005), *rev'd* on other grounds, 547 U.S. 71 (2006).

16

claim, the question is whether a material misstatement or omission in connection with the purchase or sale of a covered security is a *necessary component* of the claim."[79]

To qualify as a covered class action, the suit must be one in which "damages are sought on behalf of more than fifty persons or prospective class members."[80]   Additionally, plaintiffs must allege a misrepresentation or omission of a material fact in connection with a covered security.[81]   A "'covered security is one traded nationally and listed on a regulated national exchange or issued by an investment company that is registered, or files registration statements, under the Investment Company Act of 1940.'"[82]   The Supreme Court has shown a preference for "interpret[ing] the phrase 'in connection with' broadly."[83]   In determining whether the "in connection with" requirement is met, a court looks at whether the

---

[79]   *Xpedior*, 341 F. Supp. 2d at 268 (emphasis in original).

[80]   15 U.S.C. § 78bb(7)(5)(B).

[81]   *See id.* § 78bb(f)(1)(A).

[82]   *Romano*, 609 F.3d at 520, n.3 (quoting 15 U.S.C. § 77r(b)).

[83]   *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 88-89 (2006) (holding that SLUSA preempted claims alleged by holders of securities as well as by purchasers and sellers).

covered securities are "at the heart of th[e] case."[84]

### D.   Breach of Fiduciary Duty Claims

Under New York law, "[t]he elements of a claim for breach of a fiduciary obligation are: (i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom."[85]   Generally, "'a corporation does not owe fiduciary duties to its members or shareholders,'"[86] because recognizing such a duty "would lead to the confounding possibility that a shareholder of a corporation could bring a derivative action on behalf of the corporation against the corporation itself."[87]   In New York, a director is required to "perform his duties . . . in good faith and with that degree of care which an ordinarily prudent person in a like position would use under similar circumstances"[88] and owes this "obligation to [the] corporation and its

---

[84]   *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Secs., LLC*, 750 F. Supp. 2d 450, 455 (S.D.N.Y. 2010).   *Accord Anwar*, 728 F. Supp. 2d at 399, n.6.

[85]   *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 138 (2d Cir. 2011) (citing *Barrett v. Freifeld*, 883 N.Y.S.2d 305, 308 (2d Dep't 2009)).

[86]   *Peacock v. Herald Square Loft Corp.*, 889 N.Y.S.2d 22, 23 (1st Dep't 2009) (quoting *Hyman v. NYSE, Inc.*, 848 N.Y.S.2d 51, 53 (1st Dep't 2007)). *Accord Gates v. BEA Assocs.*, No. 88 Civ. 6522, 1990 WL 180137, at *6 (S.D.N.Y. Nov. 13, 1990).

[87]   *Hyman*, 848 N.Y.S.2d at 53.

[88]   N.Y. Bus. Corp. Law § 717(a).

shareholders."[89]

Although Gerova is a Bermuda corporation, the analysis of the breach of fiduciary duty claims against Gerova is substantively the same under Bermuda law — which "follows English law"[90] — and New York law.[91] "In the absence of substantive difference . . . a New York court will dispense with choice of law analysis; and if New York law is among the relevant choices, New York courts are free to apply it."[92]

### E.   Aiding and Abetting Breach of Fiduciary Duties Claims

"A claim for aiding and abetting a breach of fiduciary duty [under New York law] requires: (1) a breach by a fiduciary of obligations to another, (2)

---

[89]   *Hanson Trust PLC v. ML SCM Acquisition, Inc.*, 781 F.2d 264, 273 (2d Cir. 1986).  *Accord RSL Commc'ns PLC ex rel. Jervis v. Bildirici*, No. 04 Civ. 5217, 2006 WL 2689869, at *4 (S.D.N.Y. Sept. 14, 2006).

[90]   *Tyco Intern. Ltd. v. Walsh*, No. 10 Civ. 4526, 2012 WL 75365, at *1, n.2 (2d Cir. Jan. 11, 2012).

[91]   *See City of Sterling Heights Police and Fire Ret. Syst. v. Abbey Nat'l, PLC*, 423 F. Supp. 2d 348, 364 (S.D.N.Y. 2006) (stating that under English law corporations do not owe a fiduciary duty to shareholders); *Tyco*, 2012 WL 75365, at *2 ("'It is well established that . . . directors owe the company a fiduciary duty to act bona fide in the company's interest, and that 'the company' in this context is understood to mean the shareholders'") (quoting *Miller v. Bain* [2002] 1 B.C.L.C 266 (Ch.), ¶ 67, 2001 WL 1743253).

[92]   *International Bus. Machs. Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004).

that the defendant knowingly induced or participated in the breach, and (3) that plaintiff suffered damage as a result of the breach."[93]

### F.   Breach of Contract Claim

"In order to state a claim of breach of contract, the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages."[94]  "Under New York law, a party's performance under a contract is excused where the other party has substantially failed to perform its side of the bargain or, synonymously, where that party has committed a material breach."[95]  However, "[a] party cannot 'elect to continue with the contract, continue to receive benefits from it, and thereafter bring an action for rescission or total breach.'"[96]

## V.   DISCUSSION

### A.   Personal Jurisdiction over Hirst

---

[93]     *Kaufman v. Cohen*, 760 N.Y.S.2d 157, 169 (1st Dep't 2003).  *Accord In re Sharp Int'l Corp.*, 403 F.3d 43, 49 (2d Cir. 2005).

[94]     *Johnson*, 660 F.3d at 142 (citing *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004)).

[95]     *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 186 (2d Cir. 2007).

[96]     *ESPN, Inc. v. Office of the Comm'r of Baseball*, 76 F. Supp. 2d 383, 392 (S.D.N.Y. 1999) (quoting *Macfarlane & Assocs. v. Noxell Corp.*, No. 93 Civ. 5192, 1994 WL 369324, at *4 (S.D.N.Y. July 13, 1994)).

Plaintiffs assert personal jurisdiction over Hirst[97] citing his position as president of Gerova during the time of the alleged breaches of fiduciary duty.[98] Hirst does not dispute that he was involved in decisions regarding the SCP/Gerova merger and the he attended two meetings in New York regarding the merger, but presents evidence that undermines plaintiffs' allegations of jurisdiction.  Hirst maintains — and plaintiffs do not contest — that he has no real property in New York, does not maintain a bank account in New York, and has never been employed or compensated by a New York corporation.[99]  However, plaintiffs assert that Hirst, as Gerova's president at the time of SCP/Gerova merger, had sufficient ties to New York by negotiating the merger agreement in New York with SCP, a New York corporation.[100]

Construing the allegations in the light most favorable to the plaintiffs and resolving all doubt in plaintiffs' favor, I conclude that plaintiffs have provided sufficient evidence to demonstrate a prima facie case of specific personal

---

[97]    Plaintiffs assert that the court has both general and specific jurisdiction over Hirst.  *See* Pl. Opp. at 28, n.34.  Because the facts are not clear enough to support a finding of specific jurisdiction at this point, I do not reach the general jurisdiction analysis.

[98]    *See id*. at 28-29, n.34.

[99]    *See* Declaration of Gary T. Hirst ¶¶ 4-6.

[100]    *See* Pl. Opp. at 28-29, n.34.

jurisdiction over Hirst based on his involvement in the SCP/Gerova merger. However, Hirst's assertions undermine plaintiffs' allegations such that it would be premature to determine conclusively that personal jurisdiction does, in fact, exist. Therefore, I conclude that limited discovery into the issue of personal jurisdiction over Hirst is appropriate.[101]

## B.    Standing

Counts I-VI concern plaintiffs' breach of fiduciary claims against SCP and the SCP directors.[102]  Plaintiffs have adequately pled the existence of a fiduciary duty, knowing breach of that duty, and damages arising therefrom. However, under New York law, two of these claims are derivative and therefore plaintiffs lack standing to bring them directly.  Count I, failure to properly invest and value the assets is "'a classic claim of fund mismanagement that belongs to the Fund, and is therefore derivative.'"[103]  Similarly, Count II, the alleged failure to sell

---

[101]    *See Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan*, 582 F.3d 393, 401 (2d Cir. 2009) (stating that "[a] district court has wide latitude to determine the scope of discovery," but noting that where a plaintiff has not made a prima facie case for jurisdiction, courts typically deny jurisdictional discovery) (quotation marks omitted).

[102]    *See* Am. Compl. ¶ 87.

[103]    *In re Optimal U.S. Litig.*, — F. Supp. 2d —, No. 10 Civ. 4095, 2011 WL 1676067, at *14 (S.D.N.Y. May 2, 2011) (quoting *San Diego Cnty. Emps. Ret. Ass'n v. Maounis*, 749 F. Supp. 2d 104, 127 (S.D.N.Y. 2010)).

the assets in a timely manner, is also a mismanagement claim that belongs to the Fund and not to plaintiffs individually.

Counts VIII and IX allege the following breach of fiduciary duty claims against the Gerova officers and directors (Doueck, Bianco, Hirst, Hlavsa, and Laslop):  (1) allowing its assets to deteriorate and (2) transferring substantial assets to Net Five.[104]  These mismanagement claims are derivative in nature and "'[d]erivative claims against corporate directors belong to the corporation itself.'"[105]  Because plaintiffs lack standing to pursue these claims, they are dismissed.[106]

### C.    SLUSA

Counts IV, V, and VI, which allege that SCP breached its fiduciary duty regarding the merger agreement with Gerova, are precluded by SLUSA and must be dismissed.[107]  *First*, it is undisputed that Plaintiffs are a "covered class."

---

[104]    *See* Am. Compl. ¶ 91.

[105]    *Marx v. Akers*, 88 N.Y.2d 189, 193 (1996) (quoting *Auerbach v. Bennett*, 47 N.Y.2d 619, 631 (1979)).

[106]    Defendant Laslop has yet to appear in this action, but for the reasons stated above, Counts VIII and IX as alleged against him are dismissed.

[107]    Even if Counts IV, V, and VI were not precluded by SLUSA they would be dismissed, because they are derivative claims that plaintiffs have incorrectly pled as direct.

*Second*, the shares that plaintiffs received as part of the SCP/Gerova merger were not listed on a national exchange or traded nationally, however, they were "issued by" a registered investment company, and therefore qualify as covered securities.[108] Even though the Amended Complaint expressly disclaims that it sounds in fraud,[109] plaintiffs' complaint rests on the fact that the merger benefitted SCP to the plaintiffs' detriment.  The merger required approval by at least fifty percent of the domestic SCP investors,[110] which was obtained.  Unless plaintiffs were misled by misrepresentations or by material omissions, it is impossible to understand why

---

[108]     *See* 15 U.S.C. § 77r(b) ("A security is a covered security if such security is a security issued by an investment company that is registered, or that has filed a registration statement, under the Investment Company Act of 1940.").

[109]     *See* Am. Compl. ¶ 84 ("Plaintiffs expressly exclude and disclaim any allegation that could be construed as alleging or sounding in fraud").

[110]     The plaintiffs initial complaint alleged this breach as "encouraging and inducing the Class's approval of the Stillwater Transactions."  Complaint ¶ 81. Furthermore, the Amended Complaint relies on a research report issued by Dalrymple Finance LLC ("Dalrymple Report"), which alleged that the SCP assets were "likely impaired and overvalued, and that this information was being hidden from investors to allow Stillwater to collect fees based on inflated asset values." Am. Compl. ¶ 77.  While plaintiffs do not explicitly state that approval was required, they rely on the Dalrymple Report as evidence of the breaches of fiduciary duty, and the Dalrymple Report alleged that "information was being hidden from investors."  *Id.*  Furthermore, the proxy statement was included as an exhibit attached to one of plaintiffs' counsel's declarations in a related case under the same MDL.  *See* Exhibit 1 to Declaration of Jonathan Horne, Plaintiffs' Counsel, In Opposition to Defendants' Motions to Dismiss (No. 11 Civ. 07107, Docket No. 111).

they would approve a merger that provided such lucrative management fees at plaintiffs' expense.  Because of this, a material misrepresentation or omission in connection with the merger is a "*necessary component*" of plaintiffs' claim[111] and such a claim is precluded by SLUSA.

Count X alleges that Gerova and its officers aided and abetted SCP's breaches of fiduciary duty through their direct participation in the SCP/Gerova merger and "substantially assisted" the breaches by: negotiating the merger terms; acquiring the assets and liabilities of SCP even though they knew SCP had not performed due diligence; and agreeing to pay SCP large management fees.[112] Because this claim is predicated on the same facts as the related breach of fiduciary duty claim alleged against SCP (Count V), it is also precluded by SLUSA.[113]

Count XI, plaintiffs' breach of contract claim against Gerova, is not precluded by SLUSA as defendants suggest.  The Am. RRA was entered into as part of the SCP/Gerova merger and was the contract governing the shares plaintiffs

---

[111]     *Xpedior*, 341 F. Supp. 2d at 268 (emphasis in original).

[112]     *See* Am. Compl. ¶ 97.

[113]     *See e.g.*, *In re Beacon Assoc. Litig.*, 745 F. Supp. 2d at 430-31 (holding that SLUSA precluded breach of fiduciary duty claims and related aiding and abetting claims in connection with the Madoff affair); *Newman v. Family Mgmt. Corp.*, 748 F. Supp. 2d 299, 313 (S.D.N.Y. 2010) (same); *In re Merkin*, 2011 WL 4435873, at *12 (same).

received from the merger.[114]  As discussed previously, the plaintiffs are a "covered class" and the Gerova shares at issue in the Am. RRA are "covered securities," because they were "'issued by an investment company that [was] registered, or file[d] registration statements, under the Investment Company Act of 1940.'"[115]

However, "[b]reaches of contract generally fall outside the scope of the securities laws,"[116] because failing "'to carry out a promise made in connection with a securities transaction . . . does not [constitute fraud] unless, when the promise was made, the defendant secretly intended not to perform or knew that he could not perform.'"[117]  Even though breach of contract does not require fraud as a necessary component, contract claims that are an integral part of an alleged fraudulent scheme may be precluded by SLUSA,[118] but plaintiffs do not allege, and the pleading does not support, any misrepresentation or omission of material fact regarding the Am. RRA.  Without such fraudulent conduct, the breach of contract

---

[114]     *See* Am. Compl. ¶ 50.

[115]     *Romano*, 609 F.3d at 520, n.3 (quoting 15 U.S.C. § 77r(b)).

[116]     *Capital Mgmt. Select Fund, Ltd. v. Bennett*, — F.3d —, Nos. 08 Civ. 6166, 08 Civ. 6167, 08 Civ. 6230, 2012 WL 48169, at *6 (2d Cir. Jan. 10, 2012).

[117]     *Id.* (discussing fraud within the context of Rule 10b-5 actions) (quoting *Gurary v. Winehouse*, 235 F.3d 792, 801 (2d Cir. 2000)).

[118]     *See, e.g.*, *Backus v. Connecticut Cmty. Bank, N.A.*, No. 09 Civ. 1256, 2009 WL 5184360, at *11 (D. Conn. Dec. 23, 2009).

claim is not precluded by SLUSA.

### D.      Breach of Fiduciary Duty

Counts VII, VIII, and IX against Gerova allege breach of its fiduciary duty by:  1) failing to register plaintiffs' shares; 2) allowing its assets to deteriorate; and 3) transferring substantial assets to Net Five.  Plaintiffs claim that Gerova owed them a fiduciary duty because plaintiffs' interests were "directly and disproportionately tied to [the SCP/Gerova] assets,"[119] but cite no case law to support this proposition.  This conclusory argument, without more is not sufficient to survive a motion to dismiss.

Courts have held that corporate *directors* owe a fiduciary duty to shareholders where there exists a "special relationship," such as "holding themselves out as agents"[120] or when they are "shareholder[s], officer[s], and director[s] of a closely held corporation,"[121] but there is no precedent finding such a "special relationship" between a corporation and its shareholders.  A corporation

---

[119]     Pl. Opp. at 23.

[120]     *Feiner Family Trust v. VBI Corp.*, No. 07 Civ. 1914, 2007 WL 2615448, at *7 (S.D.N.Y. Sept. 11, 2007) (quotation marks omitted) (applying English law).

[121]     *American Fed. Grp., Ltd. v. Rothenberg*, 136 F.3d 897, 905 (2d Cir. 1998).

does not owe a fiduciary duty to its shareholders;[122] for this reason, plaintiffs' breach of fiduciary duty claims against Gerova are dismissed for failure to state a claim.

Count III concerns SCP's failure to pay investors who sought redemptions. Even though this failure arguably stemmed from SCP's mismanagement of the Funds, the claim is direct and therefore appropriately pleaded. The failure was not felt by all SCP investors, but only those who sought such redemptions. Therefore, the failure to pay redemptions was independent of any duty owed to the corporation,[123] and survives SCP's motion to dismiss.

Count VII, as against the Gerova officers and directors, alleges breach of their fiduciary duty by failing to register plaintiffs' shares. As with Count III, the failure to register the shares was not felt by all Gerova shareholders, but only by those individuals who received the unregistered shares as part of the SCP/Gerova merger. Because of the "asymmetrical injury," felt by some, but not all, of the shareholders, this claim survives the Gerova officers' and directors'

---

[122]     *See Peacock*, 889 N.Y.S.2d at 23.

[123]     *See, e.g.*, *Anwar*, 728 F. Supp. 2d at 402 (holding that the "asymmetrical injury" felt by investors who redeemed and those who did not was enough at the pleadings stage to show a distinct harm); *Brinckerhoff v. JAC Holding Corp.*, 782 N.Y.S.2d 58, 60 (1st Dep't 2004) (holding that where some shareholders "received a lesser benefit than other shareholders" the harm was "suffered individually").

motions to dismiss.[124]

### E.  Aiding and Abetting Breach of Fiduciary Duty

Count XII alleges that Net Five[125] substantially assisted Gerova's breach of fiduciary duty by negotiating the terms of the asset transfer, acquiring the assets, and allowing Gerova to keep the assets out of reach.[126]  Because the underlying claim against Gerova for breach of fiduciary duty (Count IX) is dismissed for failure to state a claim, the related aiding and abetting claim against Net Five is also dismissed.

### F.  Breach of Contract

Count XI alleges that Gerova breached the Am. RRA.  This agreement was made for "the benefit of Gerova Shareholders"[127] and provided that Gerova would "prepare and file with the [SEC] a 'Shelf' Registration Statement covering the resale of the Registrable Securities."[128]  The parties agree that the Registration

---

[124]   *See Anwar*, 728 F. Supp. 2d at 402; *Brinckerhoff*, 782 N.Y.S.2d at 60.

[125]   Net Five is a Florida LLC, however, because I do not reach the aiding and abetting claims against it, I do not perform a choice of law analysis.

[126]   *See* Am. Compl. ¶ 103.

[127]   Am. RRA § 8(f).

[128]   *Id.* § 2(a).

Statement was never filed with the SEC[129] and the shares were therefore never registered.[130]

Gerova claims that it failed to register the shares because SCP did not provide it with the audits required for the filing.  However, the parties agree that all of the required audits were delivered to Gerova by November 2010.[131]  Whether the audits were filed too late for Gerova to register the shares has not been sufficiently established and remains a question of fact ill-suited for decision at the motion to dismiss stage.  Because of this, plaintiffs have sufficiently pled a breach of contract claim against Gerova.

## VI.   CONCLUSION

For the foregoing reasons, Counts I, II, and VIII-IX (as relating to the Gerova officers and directors) are dismissed as derivative; Counts IV-VI and X are dismissed as precluded by SLUSA; and Counts VII-IX (as relating to Gerova) and XII are dismissed for failure to state a claim.  Counts III (breach of fiduciary duty against SCP for failing to pay redemptions), VII (as relating to the Gerova officers and directors), and XI (breach of contract against Gerova) survive defendants'

---

[129]    *See* Am. Compl. ¶ 49.

[130]    *See id.* ¶ 59.

[131]    *See id.* ¶ 57.

motions to dismiss. Hirst's motion to dismiss for lack of personal jurisdiction is denied with leave to renew after the completion of limited discovery. The Clerk of the Court is directed to close these motions [Docket Nos. 60, 62, 64, 69, 96].

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            March 5, 2012

31

**Appearances**

**For Plaintiffs:**

Frederic Scott Fox, Sr, Esq.
Donald R. Hall, Jr, Esq.
Hae Sung Nam, Esq.
Irina Kobylevsky, Esq.
Kaplan Fox & Kilsheimer LLP
850 Third Avenue, 14th Floor
New York, NY 10022
(212) 687-1980

Gregory Bradley Linkh, Esq.
Lee Albert, Esq.
Marvin Lawrence Frank, Esq.
Murray Frank LLP
275 Madison Avenue, Suite 801
New York, NY 10016
(212) 682-1818

**For Defendants SCP, Doueck, and Rudy:**

Christopher Patrick Greeley, Esq.
Herrick, Feinstein LLP
2 Park Avenue
New York, NY 10016
(212) 592-1426

**For Defendant Gerova:**

Alex M. Weingarten, Esq.
Ethan J. Brown, Esq.
Weingarten Brown LLP
10866 Wilshire Blvd., Suite 500
Los Angeles, CA 90024
(310) 229-9300

Stephen Z. Starr, Esq.
Vildan Erturk Starr, Esq.
Starr & Starr, PLLC
260 Madison Avenue, 17th Floor
New York, NY 10016
(212) 867-8165

**For Defendant Bianco:**

Ethan J. Brown, Esq.
Weingarten Brown LLP
10866 Wilshire Blvd., Suite 500
Los Angeles, CA 90024
(310) 229-9300

**For Defendant Hirst:**

Joshua Samuel Sohn, Esq.
DLA Piper US LLP
1251 Avenue of the Americas
New York, NY 10020
(212) 335-4500

**For Defendant Net Five:**

Edward Patrick Boyle, Esq.
Lawrence Henry Cooke, II, Esq.
Venable LLP
1270 Avenue of the Americas
New York, NY 10020
(212) 307-5500

**Defendant Hlavsa (pro se):**

2161 SW 35th Avenue
Ft. Lauderdale, FL 33312
(954) 727-1925